UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ANTHONY BONDS** | **CIV. ACTION NO. 3:21-04372** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SHERMAN JONES, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to enforce settlement [doc. # 27] filed by Plaintiff Anthony Bonds. The motion is opposed. For reasons detailed below, it is recommended that the motion be DENIED.

## Background

On November 8, 2021, Plaintiff Anthony Bonds (sometimes referred to in the caption of the amended complaint as "Antony Bonds") (hereinafter, "Bonds") filed the instant petition for damages in the 6th Judicial District Court for the Parish of Madison, State of Louisiana against Defendants Sgt. Sherman Jones ("Jones"), Sgt. Justin Barnes ("Barnes"), and the State of Louisiana, through the Department of Public Safety and Corrections ("DOC"). (Petition). Bonds alleged that on November 6, 2020, during his confinement as an inmate at the Bayou Correctional Center ("BCC"), guards, Jones and Barnes, sprayed him with chemicals and beat him so severely that they broke his eye socket and nose, which required him to undergo corrective surgery. *Id*.

Bonds asserted federal law claims against Jones and Barnes under 42 U.S.C. § 1983 for violation of his constitutional rights, plus state law negligence and intentional tort claims under Louisiana Civil Code Article 2315. *Id*. Bonds further alleged that the DOC was vicariously

liable for Jones and Barnes' tortious actions under state law. *Id*. In his Complaint, Bonds sought to recover damages for the injuries that he suffered in the attack, including punitive damages under § 1983 and attorney's fees under 42 U.S.C. § 1988. *Id*.

On December 21, 2021, Defendant, the DOC, removed the matter to federal court on the lone basis of federal question jurisdiction, 28 U.S.C. § 1331. (Notice of Removal).

On July 18, 2022, Bonds amended his complaint to voluntarily dismiss the DOC and, instead, to substitute Bayou Correctional Management Company, L.L.C. ("BCMC") as Defendant, in its capacity as owner of the BCC and as the employer of Jones and Barnes. *See* Judgment and Amend. Compl. [doc. #s 24-25].

On August 30, 2022, Bonds filed the instant motion to enforce a settlement agreement that he had confected with Defendant, BCMC. The motion seeks an order requiring BCMC to tender the agreed settlement funds to Bonds. On September 28, 2022, Bonds filed a supplemental memorandum advising the court that BCMC intended to fund the settlement, and that more would be known following a September 30, 2022 meeting. [doc. # 31].

In the wake of the meeting, however, Defendants Jones, Barnes, and BCMC filed a "Motion in Opposition and to Dismiss Plaintiff's Motion to Enforce Settlement," which the Clerk of Court docketed as an opposition to Bonds' motion to enforce settlement. [doc. # 32]. In the response, BCMC agreed that it had "resolved the matter out of court by tendering a settlement payment via wire payment of $15,000.00 plus costs of $282.50 to Plaintiff's counsel on Friday, August 19, 2022." *Id*. However, on the following Wednesday, Plaintiff's counsel notified BCMC that the funds had not been received, and that Plaintiff's counsel's email had been hacked, which resulted in incorrect wiring instructions being sent to Defense counsel. *Id*. Consequently, BCMC maintains that it has fully funded the settlement and that any fault does not

lie with Defendant because it was Plaintiff's counsel's email that was hacked. *Id*. BCMC contends that Plaintiff's counsel was in the best position to thwart the fraud. *Id*.

Bonds filed a reply brief on October 15, 2022, wherein he maintained that the court should enforce the settlement agreement by ordering specific performance and requiring BCMC to tender the $15,000.00 settlement funds, plus court costs, to Bonds. (Pl. Reply Brief [doc. # 33]).

Bond submitted evidence in support of his motion which shows that by Thursday, August 18, 2022, the parties had reached an agreement, in principle, to settle the case for the sum of $15,000, plus court costs. *See* Emails between D. Grodner and E. Moberley; M/Enforce Settlement, Exh. 1 [doc. # 27-3]). On August 18, 2022, Michelin Robinson, an employee associated with Bonds' attorney, Donna Grodner, received a telephone call from attorney Edwin Moberley advising her that he had received an email from Ms. Grodner, which showed signs of having been hacked. (Affidavit of Michelin Robinson and Texts; M/Enforce Settl. [doc. # 27-7]). In fact, by 3:18 p.m. on August 18, 2022, Ms. Grodner's office had received six telephone calls from law firms stating that Ms. Grodner's email had been hacked. *Id*.

At 18:17, on August 18, 2022, the record suggests that an email purporting to be from D. Grodner was sent to E. Moberley, which included Ms. Grodner's alleged IOLTA trust account number and bank routing number. *See* Emails between D. Grodner and E. Moberley; M/Enforce Settlement, Exh. 1 [doc. # 27-3]). On August 19, 2022, despite his prior knowledge that Ms. Grodner's email possibly had been hacked, counsel for BCMC, Edwin Moberley, arranged for Delta Bank to wire the agreed settlement funds of $15,000, plus $282.50 to the account referenced in the message received from Ms. Grodner's email account. *See* Opp. Brief [doc. # 32].

3

On Sunday, August 21, 2022, Ms. Grodner sent an email to Mr. Moberley stating that the funds had not yet posted. *See* Emails between D. Grodner and E. Moberley; M/Enforce Settlement, Exh. 1 [doc. # 27-3]). Later that afternoon, Moberley confusingly wrote to Grodner that they had her account information and that they would "wire to [her] on Tuesday." *Id*., pg. 5. According to Defense counsel, he was not notified about the fraud concerning the wire transfer until Wednesday, August 24, 2022. *See* Opp. Brief [doc. # 32]. By that time, however, the money could not be recovered from the hacker/thief. *See* Pl. Memo., pg. 2.

On August 23, 2022, in exchange for the agreed sum of $15,000, plus court costs of $282.50, Bonds executed a Full and Final Release and Settlement of All Claims ("FFRS") arising from his incarceration at the BCC, in favor of Defendants Jones, Barnes, and BCMC. (FFRS; M/Enforce Settlement, Exh. 4 [doc. # 27-6]). The FFRS signed by Bonds provides that the "sum shall be deemed to have been paid upon delivery of such check to the undersigned Anthony Bonds, the *receipt* and sufficiency whereof is hereby acknowledged . . ." *Id*. (emphasis added). While the foregoing may be construed as a written acknowledgement by Bonds that he received the agreed-upon sum, no one appears to dispute that the funds wired by BCMC were intercepted by a third-party and never received by Bonds' attorney.

## Analysis

Succinctly stated, the relief sought by Bonds' motion is unavailable on the present record. First, Bonds' complaint, as amended, includes no facts to support a claim for specific performance or breach of contract. Motions to enforce settlement typically arise after a judgment of dismissal has been entered.[1] Needless to say, no judgment has been entered in this

---

[1] For example,
> [w]hen the parties settle their dispute and seek dismissal, the court may choose to treat the parties' settlement as part of its dismissal order, either by retaining

4

case, and, consequently, the court must rely on ordinary pleading and jurisdictional principles to support the motion to enforce settlement. *See* discussion, *infra*.

Second, even if Bonds *had* requested specific performance in his amended complaint, none of the three remaining Defendants has filed an Answer. In other words, issue is not yet joined.

Third, the foregoing notwithstanding, the court cannot resolve competing issues of fault via disputed motion. No party appears to contest (1) that there was a valid agreement wherein Bonds agreed to settle all of his claims against Defendants for the sum of $15,000, plus costs of $282.50; (2) that BCMC endeavored to transmit the agreed settlement funds to Bonds' attorney; or (3) that the funds never reached their intended destination because they were intercepted and stolen by an unknown third-party who had hacked Bonds' attorney's email account. Nevertheless, Bonds contends that the loss is attributable to the fault of BCMC or its attorney for their failure to call Plaintiff's counsel to verify the legitimacy of the routing information, after they were on notice that Plaintiff's counsel's email likely had been hacked. Conversely, BCMC argues that fault lies with Plaintiff's counsel because it was *her* email account that was hacked. Ultimately, however, these arguments raise issues regarding the reasonableness of counsel's actions and procedures, which cannot be resolved in summary fashion. *See Beau Townsend Ford Lincoln, Inc. v. Don Hinds Ford, Inc.*, 759 Fed. App'x. 348, 359 (6th Cir. 2018) (citing

---

> jurisdiction to enforce the settlement or by directly integrating the settlement into the dismissal order. If the court does that, breaching the settlement would violate the court's order, "and ancillary jurisdiction to enforce the agreement would therefore exist."

*Vikas WSP, Ltd. v. Econ. Mud Products Co.*, 23 F.4th 442, 451–52 (5th Cir. 2022) (citation omitted).

5

cases) (court must hold a trial to decide whether and to what degree each party is responsible for the $730,000 loss caused by a hacked email);[2] *see also In re Corrugated Container Antitrust Litig.*, 752 F.2d 137, 143 (5th Cir. 1985) (at minimum, an evidentiary hearing is required).

Finally, the court questions whether it even has jurisdiction to resolve the questions of fault raised by the email hacking, together with Bonds' request for specific performance. This area of the law is quite nuanced. In *Kokkonen v. Guardian Life Ins. Co. of Am.*, the Supreme Court recognized that, for purposes of asserting otherwise nonexistent federal jurisdiction over an agreement that produced the dismissal of a federal suit, the courts may exercise ancillary jurisdiction for two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80; 114 S.Ct. 1673 (1994) (internal citations omitted).

Here, the court has not exercised any authority or decrees that require vindication or effectuation. Moreover, in *Kokkonen*, the Supreme Court stated that facts underlying an original claim for breach of an agency agreement "have nothing to do" with a claim for breach of a settlement agreement that resolved the original claim. *Kokkonen, supra*. *A fortiori*, a motion to enforce a settlement agreement that turns upon the fault of attorneys (and possibly a party) in the theft of the settlement funds has nothing to do with the underlying excessive/unwarranted force and intentional tort claims. Therefore, it is "neither . . . necessary nor even particularly efficient" to adjudicate the claims together. *Kokkonen*, 511 at 380; 114 S.Ct. at 1676. In the end,

---

[2] In *Beau Townsend Ford Lincoln, Inc.*, the court emphasized that "the factfinder must determine which party 'was in the best position to prevent the fraud.'" *Id*. (citation omitted).

"enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id*.

In this case, there is no indication that the motion to enforce settlement is premised upon any federal law, and, not even considering the fact that the citizenship of the parties likely is not diverse, the cost of the settlement plainly does not suffice to meet the amount in controversy requirement for the exercise of diversity jurisdiction, 28 U.S.C. § 1332.

Further, relying on language from *Kokkonen*, at least one district court has held that it could not exercise supplemental jurisdiction over a motion to enforce settlement, which amounted to a state law breach of contract claim, because it concluded that the claim was not so related to the principal, jurisdictional-conferring claim such that they formed part of the same case or controversy. *Boles v. Wal-Mart Stores, Inc.*, Civ. Action No. 15-373, 2016 WL 4581413, at *5 (M.D. La. Sept. 2, 2016); 28 U.S.C. § 1367(a).

The foregoing authority is persuasive, and, if followed here, bars the court's consideration of a claim for breach of contract and specific performance -- should Bonds seek to amend his complaint to add that claim. In other words, the parties' most jurisdictionally prudent course of action is to litigate liability for the lost settlement funds in state or city court. In the interim, the parties may petition the court to stay and administratively close this case.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the motion to enforce settlement [doc. # 27] filed by Plaintiff Anthony Bonds be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. The District Judge will consider timely objections before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, at Monroe, Louisiana, on this 22nd day of December, 2022.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE